Ethel Foote STARKE, Trustee under the Last Will and Testament of Lewis A. Foote, Deceased, Plaintiff,

v.

MANUFACTURERS NATIONAL BANK OF DETROIT, a national banking association, Defendant.

Civ. A. No. 15398.

United States District Court E. D. Michigan, S. D.

June 26, 1959.

McClintock, Fulton, Donovan & Waterman, Reuben M. Waterman, Detroit, Mich., for plaintiff.

Bodman, Longley, Bogle, Armstrong & Dahling, Carson C. Grunewald, Detroit, Mich., for defendant.

LEVIN, District Judge.

Plaintiff, Ethel Foote Starke, a resident of California, brings this action for

breach of contract against the Manufacturers National Bank of Detroit.

This action was submitted upon an agreed statement of facts of which the following are pertinent:

On February 15, 1927 Letters Patent were issued to Lewis A. Foote for a System of Accrual Accounting. Subsequently the Foote Adap-Table Systems Company became the owner of the patent. In 1933, by a contract denominated a Special Proposal, the Foote Adap-Table Systems Company granted to defendant the right to use the patented system in connection with its banking operations. Paragraph 6 of the Special Proposal provides as follows:

"Banks, other corporations, or parties which may hereafter become affiliated with, or absorbed by you (or you by them) through purchase, merger, consolidation, liquidation, absorption, or otherwise, and which at such time are not licensed to use the System, shall have the right and license, or you may obtain the right and license, to use and apply the System to the assets and accounts (in original or converted form) of such affiliated or absorbed banks, corporations, or parties only upon the signing of a new contract with us on the same terms and conditions on which the System is then being sold by us: Provided, however, that if our services are not required in connection with the installation or application thereof, the right and license to use and apply the System to the assets and accounts (in original or converted form) of such absorbed or merged banks, corporations, or parties, may be obtained upon the payment to us of ten cents for each $1,000.00 of total resources of such banks, corporations, or parties at the time of the merger or absorption, but not less than $500.00 as a minimum Rights Fee."

The patent expired on February 15, 1944. The defendant in 1952 absorbed the United Savings Bank of Detroit with total resources of $48,266,902.77, and in 1955 the Industrial National Bank of Detroit with resources of $173,765,255.97. The patented system was applied by the defendant to all of its assets and accounts, including those of the merged banks. Plaintiff has succeeded to the rights which the Foote Adap-Table Systems Company may have against the defendant by reason of the Special Proposal executed by the company and the defendant.

It is the contention of plaintiff that the language of Paragraph 6 of the Special Proposal reading that "the right and license to use and apply the System to the assets and accounts (in original or converted form) of such absorbed or merged banks, corporations, or parties, may be obtained upon the payment to us of ten cents for each $1,000.00 of total resources of such banks" obligated defendant to pay plaintiff for the application of the system to the assets acquired from the United Savings Bank and the Industrial National Bank. For the failure to make these payments, the plaintiff brings this action for $25,000.

Whether plaintiff has a cause of action depends upon the nature of the agreement embodied in the Special Proposal and the duration of defendant's obligations under Paragraph 6 of the proposal.

A consideration of the Special Proposal and the advertising material issued by the Foote Adap-Table Systems Company with reference to the Adap-Table System makes it clear that the Special Proposal was an agreement with respect to the System of Accrual Accounting patented by Lewis A. Foote. Support for this conclusion is also found in the fact that in the absence of the protection accorded to the Foote Adap-Table Systems Company by the patent there would have been no reason for the defendant to execute the Special Proposal.

By the terms of the Special Proposal, defendant secured permission to use a patented system which did not affect the monopoly of the patentee. "All alienations of a mere right to use the invention operate only as licenses." Heaton-Peninsular Button-Fastener Co.

v. Eureka Specialty Co., 6 Cir., 77 F. 288, 290; see, also, DeForest Radio Telephone & Telegraph Co. v. Radio Corporation of America, 3 Cir., 9 F.2d 150. The Special Proposal granted to the defendant a non-exclusive license to use the patented system. It did not, as plaintiff contends, provide for the sale of a bookkeeping system.

■ Parties to a licensing agreement may provide that the agreement shall extend beyond the life of the patent. In the absence of such express provision, a licensing agreement terminates with the expiration of the patent. Sproull v. Pratt & Whitney Co., 2 Cir., 108 F. 963; Pressed Steel Car Co. v. Union Pac. R. Co., 2 Cir., 270 F. 518; E. R. Squibb & Sons v. Chemical Foundation, Inc., 2 Cir., 93 F.2d 475.

■ Plaintiff contends that an intention to have the Special Proposal continue beyond the expiration date of the patent may be fairly inferred from Paragraph 1 of the proposal which grants to the defendant "perpetual, nonnegotiable rights" to use the patented system. However, it is to Paragraph 6 and not Paragraph 1 of the proposal that we must look to determine the obligations imposed upon the defendant for the extension of the system to the additional assets acquired by the defendant. This paragraph provides that the defendant could obtain the right and license to use and apply the system to the assets and accounts of affiliated banks "which at such time are not licensed to use the System." This language, calling for the obtaining of a license, could only have application to a patented system. When the defendant applied the system to the assets of the United Savings Bank and Industrial National Bank the system was in the public domain. No license was necessary to employ it. It would be an unreasonable construction of Paragraph 6 to interpret it to require the defendant to obtain a license for the use of the system at a time when any bank or any one else could have used the system without obtaining permission from the Foote Adap-Table Systems Company to do so.

I find that the licensing agreement terminated with the expiration of the patent and therefore the defendant is not obligated to make any payment for applying the system to the subsequently acquired assets.

A judgment for no cause of action will be entered.