AMERICAN SECURIT COMPANY,
Appellant,

v.

SHATTERPROOF GLASS
CORPORATION.

Nos. 12706, 12739.

United States Court of Appeals
Third Circuit.

Argued Feb. 17, 1959.

Decided July 14, 1959.

As Amended Aug. 3, 1959.

Rehearing Denied Aug. 24, 1959.

**770**

connection with certain patents for the tempering of glass owned or controlled by them. This resulted, on October 30, 1948, in a final judgment by consent decree entered by Judge Kloeb in the United States District Court for the Northern District of Ohio, Western Division at Toledo, against Securit and other defendants named in that suit, Civil Action No. 5239, the Ohio suit.

The consent decree provided that if a request for license was made to one of the patentees, defendants in the Ohio suit, including Securit, for use of "any, some, or all" of the patents covered by that litigation and an agreement as to the royalty to be paid by the applicant could not be reached between the patentee and the applicant for a license within sixty days of the request, the applicant could apply to the Ohio District Court to fix a reasonable royalty. In the meantime, pending the fixing of a royalty rate, the applicant should be entitled to make use of the patent or patents without being charged with infringement and without payment of royalties. The decree stated also that the burden of proof should rest on the owner of the patent to establish the reasonableness of the royalty demanded. The decree provided as well that either the applicant or the owner of the patent could apply to the Ohio court to fix an interim royalty rate, the decree stating further that: "Where an interim license or sublicense has been issued pursuant to this Subsection, reasonable royalty rates, if any, as finally determined by the Court shall be retroactive for the applicant and all other licensees under the same patents to the date the applicant filed his application with the Court." The Ohio court also retained jurisdiction for the purposes of making such further orders or directions as might be necessary to construe or carry out the purposes of the decree. Any party to the judgment, including, of course, Securit, could apply for a construction of the Toledo consent decree.

John L. Seymour, Joseph W. Burns, New York City (Bauer & Seymour, New York City, on the brief), for appellant.

William C. McCoy, Jr., Cleveland, Ohio (Wm. C. McCoy, McCoy, Greene & Te-Grotenhuis, Cleveland, Ohio, Caleb S. Layton, Richards, Layton & Finger, Wilmington, Del., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The background of the appeals at bar is complicated.[1] We begin with facts relating to the so-called "Toledo decree" as follows. The United States charged The American Securit Company, the plaintiff in the case at bar, and certain other corporate defendants, with violations of the antitrust laws of the United States in

---

1. A factual history is set out in the opinion of Judge Steel of the court below. 1958, 166 F.Supp. 813, 818–822. See also the opinion of Chief Judge Leahy, 1957, 154 F.Supp. 890.

Section XIV(B) of the consent decree provided in substance that each of the corporate defendants was restrained from including any restriction or condition in any license or sublicense granted by it subject to certain exceptions not pertinent here.

On March 20, 1951, negotiations were opened by Shatterproof Glass Corporation with an inquiry to Securit respecting the possibilities of obtaining a license under certain patents owned by Securit. Correspondence continued between the two corporations until February 1955. It appears from the correspondence between the two companies that Securit did not desire to license Shatterproof under any of the patents unless it licensed Shatterproof under all of them, as set out and described in "Schedule A" attached to Securit's Standard Licensing Agreement referred to more specifically hereafter. Securit offered to Shatterproof the Standard Licensing Agreement which Securit had employed with several other licensees. The royalty for the entire package of patents was to be two cents (2¢) per square foot of glass manufactured and sold by the licensee regardless of the number of patents actually used. Correspondence between Shatterproof and Securit ceased temporarily on July 12, 1951. About September 1952, it appears that Shatterproof installed equipment for the manufacture of tempered flat glass. On March 4, 1953, Shatterproof renewed the correspondence and in its letter to Securit requested licenses under the Toledo decree and asked for royalty under four different combinations of patents. Securit's reply of March 19, 1953, indicated that that company would issue licenses restricted to patents specified by Shatterproof but that the royalty would be the same, 2¢ per square foot, whether one or more patents would be used by the licensee.

It appears that Shatterproof commenced commercial production of glass in June 1953, and has not paid any royalty for the use of the patents to date.

The suit at bar was commenced on March 7, 1955, and contained six counts. Counts I to IV, inclusive, *mutatis mutandis*, alleged that Shatterproof constructed apparatus infringing four individual patents [2] and thereby deprived Securit of profits. Counts V and VI of Securit's complaint in the court below were designed to state causes of action based on unfair competition growing out of the alleged infringements and asserted that the negotiations initiated and carried on by Shatterproof with Securit were spurious, not looking toward securing licenses but were instituted in order to make use of the patents without paying royalties to Securit. Securit sought an accounting, damages and an injunction. Shatterproof filed an answer to this complaint, denying the validity of the patents or their infringement, and by way of affirmative defenses, asserted that Securit was insisting on package licensing and thereby (1) was itself indulging in misuse of patents, and (2) was in violation of the Toledo decree. Shatterproof also counterclaimed for a declaratory judgment to have the patents adjudged invalid and not infringed.

Several affidavits were executed on behalf of the respective parties. Extensive depositions were taken. The Toledo consent decree was introduced, as were portions of the proceeding in the Ohio court. Some of these documents are referred to more particularly hereinafter.

On June 13, 1955, Securit filed motions in the instant case to dismiss the defenses of patent misuse and violation of the Toledo decree. These motions were denied on May 25, 1956, in an opinion letter by Judge Leahy. Appropriate orders were entered.[3]

2. The patents were: United States Patent No. 2,131,406, Mosmieri; United States Patent No. 2,167,294, Despret; United States Patent No. 2,093,040, Eckert, expired September 14, 1954; and United States Patent No. 2,303,749, Long.

3. Addressing himself to the second defense, Judge Leahy stated: "This defense refers to the Toledo decree and asserts its [Shatterproof's] right to a royalty-free license. Under this defense defendant shows that it has attempted to nego-

On July 25, 1955, Shatterproof filed an application in the Ohio court seeking, *inter alia*, a determination of a reasonable royalty for the patents sued on in the court below and for an order requiring Securit to comply with the Toledo decree. On September 14, 1955, Securit filed a motion in the case at bar to enjoin Shatterproof from prosecuting its application to the Ohio court referred to in the preceding sentence. On October 6, 1955, the United States filed in the Ohio court a petition for an order to construe and enforce the consent decree, alleging that Securit's action in bringing the suit at bar against Shatterproof was instituted as an attempt to defeat the Toledo decree and was barred by it and prayed that Securit be permanently enjoined from taking action in any court to prevent any applicant for a license from exercising any rights conferred by the Toledo decree. On October 7, 1955, the United States intervened in the suit at bar and filed a "Representation" in which it asked the court to refrain from taking any further action pending a decision by the Ohio court on the petition of the United States filed therein which we have referred to in this paragraph. On October 10, 1955, the court below entered an order denying Securit's motion to restrain Shatterproof from prosecuting its application in the Ohio court and staying the case at bar until after the determination by the Ohio court of the petition of the United States filed therein. On October 19, 1955, Judge Kloeb, of the Ohio court, delivered an oral opinion in which he stated his reasons for declining jurisdiction.[4] On December 13, 1955, Judge Kloeb dismissed the petition of the United States and the application of Shatterproof seeking respectively an injunction against Securit from taking any action in any court preventing an applicant for license from exercising any rights conferred by the Toledo decree and a determination of reasonable royalties. On January 20, 1956, Securit filed a motion in the court below entitled a "Motion to Proceed", based upon Judge Kloeb's actions in the Ohio suit.

On December 26, 1956, Shatterproof filed a motion in the court below for summary judgment to dismiss the patent infringement counts, Counts I through IV, urging misuse and violation of the Toledo decree as grounds for the dismissal. Securit opposed the motion for summary judgment. On February 20, 1957, the defendant Shatterproof moved for dismissal of Counts V and VI on the ground that they failed to state a claim upon which relief could have been granted. On July 19, 1957, Judge Leahy filed an opinion on the motion of December 26, 1956, concluding that Securit's policy of refusing to grant a license under one or more of its patents, unless a license was taken under all in the package for a fixed royalty, constituted (1) unlawful coercion and an illegal extension of patent monopoly and (2) a violation of the Toledo decree, and that for these reasons Securit was barred from enforcing its patent rights in the instant case.[5] Judge

tiate for several years with plaintiff in order to fix some reasonable royalty base for a license from plaintiff to defendant. Under the original Toledo decree any party may operate under plaintiff's patents during the period of negotiations for a license and before the license is actually granted. Here, on the record before me, it would appear defendant has made a bona fide . effort to obtain a license." These orders are also appealed from as appears at a later point in this opinion.

4. Judge Kloeb stated in part: "It [the action by Shatterproof in applying to the Ohio Court to fix a reasonable royalty

rate] is somewhat like a little fellow who annoys his neighbor's boy, taunts and berates him, and finally puts a stick on his shoulder. When the other fellow knocks it off he runs to mamma and hides under her skirts.

"I don't believe I want to accept jurisdiction under these circumstances. It seems to me the Court is being used as an alternative recourse, as a last resort."

5. Judge Leahy considered Securit's offer to license its patents individually, but stated that the result of such an offer was also an unlawful coercion on the licensee. He did not, . however, consider the nature of the patents involved, e.g.,

Leahy stated that he would grant summary judgment under Rule 56, Fed.R.Civ. Proc., 28 U.S.C., on Counts I through IV of the complaint. Judge Leahy, however, entered no order or decree.[6]

On July 9, 1958, Securit filed a petition to the Ohio court and referred to Judge Leahy's opinion which stated, as we have said, that the court below would grant Shatterproof's motion for summary judgment, and also to a suit brought by Securit against Hamilton Glass Company, Inc. in the United States District Court for the Southern District of Indiana (TH55–C–37) in which Securit alleged that Hamilton had infringed certain patents covered by the Toledo decree. In this suit Hamilton had filed a counterclaim and had alleged unfair competition, monopolization and restraint of trade by Securit. The Indiana district court found that Securit was barred from maintaining its suits against Hamilton because Securit had misused its patents and had violated the Toledo decree. The Court of Appeals for the Seventh Circuit reversed but took the position, however, that the Indiana District Court had the authority to construe the consent decree for the purpose of adjudicating a charge of misuse of patents based on alleged violation of the consent decree. In its petition of July 9, 1958, Securit alleged that both the Delaware and the Indiana courts misinterpreted the consent decree by holding that Securit's refusal to grant licenses except by way of the package was a violation of the Toledo decree.[7, 8] On August 19, 1958, Judge Kloeb, pursuant to Securit's petition issued an order to

show cause to the Attorney General of the United States, Shatterproof, and the Hamilton Glass Company why Securit's petition should not be granted, and set the matter down for hearing on September 16, 1958.

On September 3, 1958, Shatterproof filed a motion in the court below to enjoin Securit from prosecuting further its petition in the Ohio court until termination of the action in the court below and the disposition of any appeal. On September 15, 1958, the court below, by Judge Steel, concluded that its power to grant injunctive relief was not negatived by United States Gypsum Co. v. National Gypsum Co., 1957, 352 U.S. 457, 77 S.Ct. 490, 1 L.Ed.2d 465 though conceding that the Ohio court, having rendered the consent decree, was peculiarly competent to construe it. The court below was of the opinion that because Securit had selected the Delaware forum it should be restricted to it, and enjoined Securit from taking any action under its petition of July 8, 1958, to the Ohio court. Nonetheless a hearing was held before Judge Kloeb on September 16, 1958. Shatterproof came into court and offered the injunction issued by Judge Steel the preceding day for the information of Judge Kloeb but took no further part in the proceedings. Judge Kloeb delivered an oral opinion[9] in which he concluded that there was no violation of the consent decree by the package licensing plan followed by Securit for the preceding ten years.

On September 22, 1958, Judge Steel, finding that there was no just reason for delay, and acting on Judge Leahy's opin-

---

whether they were patents for alternate methods of manufacture of tempered flat glass, or the impact of package licensing when all patents relate to manufacture of a single product, if such were the case.

6. Judge Leahy stated: "For the foregoing reasons, defendant's motion for summary judgment as to Counts I through IV of the Complaint is granted. An appropriate order may be submitted but only after there is a determination by trial, or otherwise, of the remaining counts in plaintiff's complaint." 1957, 154 F.Supp. 890, 898.

7. The precise allegation was as follows: "The Delaware and Indiana Courts have misinterpreted this Court's decree and have ruled that Petitioner violated the decree by (1) licensing all its patents in a single package, and (2) refusing to license less than all the patents for less than the royalty charged for the package."

8. The decision of the Indiana court was reversed by the Court of Appeals for the Seventh Circuit, 1958, 254 F.2d 889, primarily on the ground that the case was not ripe for summary judgment.

9. 119 U.S.P.Q. 86 (1958).

ion [10] of July 19, 1957, filed on the motion for summary judgment, entered an order dismissing Securit's Counts I through IV, under Rule 54(b), Fed.R.Civ.Proc. Judge Steel, employing the procedure required by Rule 54(b), also dismissed Counts V and VI, the unfair competition counts, basing this dismissal on the point that the adjudication that Securit could not enforce its patents against Shatterproof was conclusive as to claims of unfair competition. Judge Steel also denied a motion by Securit to amend the complaint, the amendment being designed primarily to buttress the unfair competition counts. A motion by Securit to dismiss the counterclaim filed by Shatterproof is still pending, as are applications for counsel fees. The court below suggested that since, in its view, the misuse issue was settled by the judgment dismissing Counts I to IV, inclusive, that judgment made the invalidity and noninfringement issues of Shatterproof's counterclaim "probably moot".[11]

The appeal at our No. 12,706 is taken from the order of September 15, 1958, granting an injunction against Securit. The appeal at our No. 12,739 is taken from the final judgment dismissing Counts I through IV and Counts V and VI, and from the following interim orders: (1) order of Judge Leahy of May 12, 1955, allowing Shatterproof to file an answer out of time, (2) order of Judge Leahy denying Securit's motion to dismiss Shatterproof's defense of misuse, (3) order of Judge Leahy denying Securit's motion to dismiss Shatterproof's second defense, non-compliance with the Toledo decree, and (4) order of Judge Steel denying Securit's motion to file an amended complaint.

On September 29, 1958, the Ohio court by Judge Kloeb, following his oral opinion of September 16, 1958, made findings of fact and conclusions of law, construed the consent decree of October 30, 1948, and held that a grant by Securit of a license to use all of the patents in its package under a flat or single royalty for all patents licensed would not violate the consent decree whether such licensing was or was not called a "package"; that Securit did not violate the consent decree by advising "an applicant" that it would not license an individual patent for less than the royalty charged for all of its patents; that Sections XIV and XVII of the consent decree do not require Securit to set a royalty on each individual patent subject to the consent decree and that Securit could set a flat royalty on "any, some, or all of its patents", that any dissatisfied applicant for a patent might apply to the Ohio court for relief; that Securit's practice of granting to any applicant a license to use any, some, or all of its patents for a flat royalty of 2 cents per square foot of glass tempered was reasonable and non-discriminatory; that Section XIV(C) and Section XIV(D) did not provide an applicant with a free license to use patents subject to the consent decree but did provide that if a bona fide written application for a license were made to the patent owner, the applicant could commence using the patents and any royalty agreed to by the applicant and patent owner or fixed by the court should be retroactive to the date the applicant commenced to use the patents; and that the objective of the consent decree was to prevent practices which violated the antitrust laws. The Ohio court also ruled that none of Securit's licensing practices, as described in the petition, and that none of the provisions of Securit's standard licensing contract violated the consent decree. The Ohio court held also that despite the voluminous exchange of correspondence between Securit and Shatterproof in which Shatterproof ostensibly was applying for licenses, Shatterproof had not made a bona

---

10. See again 154 F.Supp. 890.

11. The order and the judgments first referred to are appealable. The three considerations which would lead to a different conclusion, set out in Panichella v. Pennsylvania Railroad Co., 3 Cir., 1958, 252 F.2d 452, are absent in the case at bar. The interim orders are appealable also since they are incidental to the judgment and the order first referred to.

fide application for a license; i. e., that Shatterproof's application was "not made in good faith."

The foregoing describes sufficiently the litigation in the court below and the proceedings in the Ohio court.

## I

■ The substantial issue presented by the appeals at bar is whether package licensing, compulsory, as distinguished from voluntary, insofar as the applicant for a license is concerned, is a violation of the consent decree entered by the United States District Court for the Northern District of Ohio, Western Division, on October 30, 1948 (United States v. Libbey-Owens-Ford Glass Company, et al., Civil Action No. 5239), or constituted a misuse of patents of such a character as to prohibit American Securit Company from maintaining a suit in the court below for the alleged infringement of four patents owned by it and included among some thirty-five patents owned by Securit covered by the consent decree entered by the Ohio court. The court below resolved this major issue in favor of Shatterproof and against Securit on motion for summary judgment. Rule 56, Fed.R.Civ. Proc. 28 U.S.C.

Prior to deciding the issue referred to, other preliminary questions require discussion and disposition. Is there present a genuine issue of material fact as to whether it was the policy of Securit to license only by way of package licensing? Rule 56(c). We conclude, as did the court below, that there was not. There is no doubt but that Securit has maintained the policy of requiring its licensees to accept package licensing. Ingouf, Vice-President and Treasurer of Securit, testifying by deposition on July 26, 1956, was asked on direct examination as to whether Securit would grant licenses for individual patents, and replied: "We do not grant a license on that basis." [12] The record shows that no licenses were granted to any company by Securit except under its Standard Licensing Agreement providing for package licensing. The correspondence between Securit and Shatterproof demonstrates the refusal of Securit to set royalties on specified groups of patents covered by the Toledo consent decree.[13] We are of the opinion, particularly in view of Securit's stated policy referred to in the preceding paragraph, that no genuine issue of material fact lurks in this phase of the case. Cf. International Salt Co. v. United States, 1947, 332 U.S. 392, at pages 396, 398, 68 S.Ct. 12, 92 L.Ed. 20. We are also of the view, as apparently was the court below, though it did not expressly determine this question, that Shatterproof, insofar as it could, amounts of royalty for specified groups of patents not being obtainable by it from Securit, made a *bona fide* application to Securit for licensing under the Toledo decree.[14, 15] Indeed, if we cor-

12. See Deposition of Mr. Robert Ingouf, Docket Item No. 102, pp. 121, 163–165. See also id. at pp. 309–310.

13. See "Stipulation Re Certain Letters" and Securit's Standard Licensing Agreement, Docket Item No. 32. We conclude, as did the court below, that Securit's offer to license any patent at the rate of 2¢ per square foot of glass manufactured thereunder was a mere "catalyst" to compel Shatterproof to accept the package. 154 F.Supp. at page 895.

14. See Shatterproof's letter of March 4, 1953, and Securit's reply of March 19, 1953. See also the subsequent correspondence contained in the Stipulation referred to in note 13, supra.

15. In so stating we are not unaware of the conclusion of the Ohio court to the contrary. See the oral opinion of Judge Kloeb, Finding of Fact No. 10, 119 U.S. P.Q. 86, 90. Judge Kloeb's opinion is, of course, entitled to great weight but we cannot concur in his view.

It may be noted parenthetically that the finding referred to presents no element of *res judicata* insofar as Shatterproof is concerned, for the following reasons: (1) When Shatterproof first appeared in the Ohio court Judge Kloeb declined jurisdiction, note 4, supra; (2) When Shatterproof offered the Delaware injunction to the Ohio court it did not "appear" therein as Judge Kloeb stated, 119 U.S.P.Q. 86, 89–90 (1958), or subject itself to that court's jurisdiction; and (3) Judge Kloeb's order of September 29, 1958, construing the consent decree, was later in time than that of Judge

rectly apprehend the law, whether Shatterproof made a *bona fide* application to Securit for licensing is material only by way of corroboration of Securit's settled policy, as found by the court below, of licensing only by way of package. Cf. Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 494, 62 S.Ct. 402, 86 L.Ed. 363. Furthermore, if Shatterproof's hands be unclean in that it made no *bona fide* application to Securit for licensing, that uncleanliness will not render Securit's hands clean if it is unlawfully extending a patent monopoly.

We come, therefore, finally, to the naked question: Whether Securit's mandatory package licensing *per se* constitutes a misuse of patents and a violation of the Toledo consent decree? We point out that not a single one of the patents covered by the consent decree, which includes the four patents sued on by Securit in the instant case, is in the record before us. An examination of "Schedule B.5.", attached to and made a part of the consent decree, demonstrates that at least thirty-one of the patents and one patent application owned by Securit and included in "Schedule A", attached to and made a part of Securit's Standard Licensing Agreement, are included in the consent decree. From the descriptive titles of Securit's patents contained in the consent decree and Securit's Standard Licensing Agreement, it appears affirmatively that at least some of these patents are apparatus or process patents in the flat glass-making art. An examination of the consent decree and such portions of the record of the proceedings in the Ohio court as are before us, limited though they may be, nonetheless show that Securit's patents covered by the consent decree and included in the group of patents sought to be licensed by Securit to Shatterproof as a package, covered at least a portion of the flat glass-making art. We cannot tell on the present record whether the patents which Securit offered to Shatterproof as a package are dominant in that art but we are not presently concerned with the issue of whether those patents offered by Securit to Shatterproof licensed as a package, would sustain a charge of violation of the antitrust laws.

To put our problem in another form: Can it be said that the conjoint licensing by mandate of the patentee of two or more apparatus or process patents in the same art, whatever the nature of their disclosures, whether for basic inventions or mere minor improvements, will sustain a charge of a patent misuse? The following circumstances are present. It must be conceded that there are patents involved covered by the Toledo decree: that these patents are in the flat glass-making art and the patents are not in the record and that their nature is disclosed only by way of brief descriptive titles.

The control of a patent monopoly carries with it the power to fix royalties for the reward of the patentee, and the patentee may even refuse to license.[16] The power conferred by the patent monopoly may be great enough, assuming that the patented process or product is a desirable one, to compel the licensee to submit to other conditions. See the conditions referred to in the cases cited and discussed below. The patent monopoly can be used, as Securit has employed it, to compel licensees to accept licenses under other patents in the same art. Indeed, what conditions can be imposed by the patentees in the exercise of patent monopoly are limited, legal barriers aside, only by the ingenuity employed by the patentees in their attempts to obtain the maximum return for the use of their patented properties.

In Transparent-Wrap Machine Corp. v. Stokes Co., 1947, 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563, the Supreme Court held lawful a requirement by the licensor

Steel, as stated at a later point in this opinion.

16. We are now putting to one side the terms of the Toledo decree requiring Securit to grant licenses to applicants without discrimination. This issue is disposed of at a later point in the opinion.

that the licensee assign to the licensor improvement patents applicable to the patented and licensed machine. This was the use of "one legalized monopoly to acquire another legalized monopoly." Id., 329 U.S. at page 644, 67 S.Ct. at page 614. But use of a patent to restrain trade in unpatented articles was prohibited in International Salt Co. v. United States, supra. Even where control of the unpatented article may fall short of a prohibited restraint of trade, a court will not lend its aid to enforce the tying-in of an unpatented article to the patented article. Morton Salt Co. v. Suppiger Co., supra; Transparent-Wrap Machine Corp. v. Stokes Co., supra, 329 U.S. at page 645, 67 S.Ct. 610. In determining whether the patents were lawfully used, the Supreme Court in the two cases last cited looked to the nature of patent monopolies. It is by the same inquiry that the boundary line of the lawful use of patents is discernible in the circumstances of the case at bar.

■ Each patent gives its owner a monopoly in respect to its disclosures, so much and no more. It is a grant of the exclusive right to manufacture, use and sell the invention which is disclosed. That invention is what the patent grant protects by the monopoly, not that invention plus some embellishment, improvement, or alternate product or process, which also happens to be patented. See Motion Picture Patents Co. v. Universal Film Co., 1917, 243 U.S. 502, 511–513, 37 S.Ct. 416, 61 L.Ed. 871. Each monopoly must stand on its own footing. Cf. United States v. Paramount Pictures, 1948, 334 U.S. 131, 158, 68 S.Ct. 915, 92 L.Ed. 1260.[17] Mandatory package licensing is no more than the exercise of the power created by a particular patent monopoly to condition the licensing of that patent upon the acceptance of another patent but that is too much. The protection, or monopoly, which is given to the first patent stops where the monopoly of the second begins.

Whatever may be the asserted reason or justification of the patent owner, if he compels a licensee to accept a package of patents or none at all, he employs one patent as a lever to compel the acceptance of a license under another. Equity will not countenance such a result. We conclude that the court below committed no error in finding that the defense of misuse asserted by Shatterproof is a valid one.

We deem it unnecessary to discuss at length the application of the doctrine of licensee estoppel. It is sufficient to say here that this factor alone in our opinion is enough to render mandatory package licensing a patent misuse. See Automatic Radio Mfg. Co. v. Hazeltine, 1950, 339 U.S. 827, 836, 70 S.Ct. 894, 94 L.Ed. 1312.

■ We conclude also, and quite apart from all of the foregoing, that Paragraph 8(a) of Securit's Standard Licensing Agreement [18] which provides that "that agreement shall continue "in full force and effect to the expiration of the last to expire of any" of Securit's patents set out in "Schedule A" constitutes a patent misuse for it extends the payment of royalties of patents under patents which may expire to the expiration date of that patent most recently granted to Securit. Indeed the expiration clause of the contract works an "aggravating hardship" on the licensee as Judge Leahy stated, in that it demands the renunciation of all patents, whether wanted or unwanted under the license.

We conclude for these reasons also that under the circumstances at bar the court below committed no error in ruling that Securit had misused its patents and that this misuse constituted a valid defense to the infringement suit.

17. Compare Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 459, 60 S. Ct. 618, 84 L.Ed. 852, where the Supreme Court stated that the patent monopoly of one invention may not be enlarged for the exploitation of another.

18. Which provides: "Unless sooner terminated under the provisions of Articles 6 or 7 hereof, this agreement shall continue in full force and effect to the expiration of the last to expire of any of the Licensor's U. S. Letters Patent listed in Schedule A attached hereto."

In so ruling we are not unaware of the principle enunciated in Kennedy v. Silas Mason Co., 1948, 334 U.S. 249, 257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347, as follows: "We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide." We conclude nonetheless that the present record affords a sufficient basis to decide the ultimate and important issue involved in this case and that it is unnecessary to vacate the judgment of the court below to the end that the record may be enlarged. The techniques applicable under Rule 56 have been applied properly and are sufficient to afford a firm basis for our decision. Cf. Morton Salt Co. v. Suppiger Co.; International Salt Co. v. United States; and Automatic Radio Mfg. Co. v. Hazeltine, supra, all decided under Rule 56.

## II

[7] We agree also with the ruling of the court below that Securit violated the Toledo consent decree. That it did so seems crystal clear despite Judge Kloeb's holding to the contrary as demonstrated by his oral opinion construing the consent decree, cited in note 9, supra. Paragraph XIV B. of the decree expressly provides, subject to other provisions not pertinent here, that Securit and the other corporate defendants in the Ohio court were enjoined and restrained "from including any restriction or condition whatsoever in any license or sublicense granted it * * *." Paragraph XVII(1)(a) of the decree enjoined Securit from granting any license which provided as a condition that the applicant should accept a

license under another patent owned or controlled by Securit. Securit's actions in the case at bar demonstrates a violation of these conditions. We are aware, of course, that Judge Kloeb framed the consent decree and his views as to its interpretation are entitled to great weight but we cannot agree with them.

We conclude also that the court below had the jurisdiction, the power, to construe and interpret the consent decree. As we have indicated, note 15, supra, Shatterproof was not a party to the proceedings in the Ohio court when the consent decree was entered, nor has it become such to this day. The court below had jurisdiction of the parties and of the subject matter and was entitled to adjudicate the issues presented. Moreover, as we have shown, the adjudication by the court below, by Judge Steel, preceded by several days the order of Judge Kloeb, construing the consent decree. Judge Leahy's opinion determining the scope and effect of the consent decree preceded by more than a year Judge Kloeb's opinion construing the consent decree.

## III

Other points in the case, whether or not raised by the parties, do not require discussion.

We will make the following dispositions of the judgments and orders appealed from.

(1) The order of Judge Leahy allowing the filing of an answer by Shatterproof will be affirmed, no basis for reversal being present.

(2) The order of Judge Leahy denying Securit's motion to dismiss Shatterproof's defense of misuse will be affirmed for obvious reasons.

(3) The order of Judge Leahy denying Securit's motion to dismiss Shatterproof's second defense will be affirmed.

(4) The order of Judge Steel denying Securit's motion to file an amended complaint will be affirmed for the reasons stated by Judge Steel for denial of the motion.[19]

19. See 166 F.Supp. at page 827.

(5) The judgments dismissing counts I through IV and counts V and VI of Securit's complaint will be affirmed. Objection by Securit to the dismissal of Counts V and VI, the unfair competition counts, was not pressed before us, although of course, it was not abandoned, the dismissal having been complained of in Securit's brief. We affirm on the basis of Judge Steel's opinion.[20]

(6) The order of Judge Steel enjoining Securit from taking any action in United States v. Libbey-Owens-Ford Glass Company, et al., Civil Action No. 5239 in the Northern District of Ohio, Western Division, "which will seek a determination, finding or any other type of adjudication or judicial expression as against Shatterproof which is in conflict with any one or more of the * * * views" expressed by Judge Leahy at 154 F.Supp. 890, and specified in Judge Steel's order, will be affirmed.