**ROCFORM CORPORATION, Plaintiff,**
v.
**ACITELLI–STANDARD CONCRETE
WALL, INC., Defendant.**
Civ. A. No. 22739.

United States District Court
E. D. Michigan, S. D.
June 25, 1964.

Clarence B. Zewadski and William H. Griffith, of Whittemore, Hulbert & Belknap, Detroit, Mich., for plaintiff.

Daniel G. Cullen and Bernard J. Cantor, of Cullen, Sloman & Cantor, Detroit, Mich., for defendant.

MACHROWICZ, District Judge.

This is an action for infringement of a patent on a "Prefabricated Wall Form" used for casting concrete walls.

Defendant filed an answer, denying validity of the patent and its infringement, as well as a counter-claim for damages, charging violations of anti-trust laws and misuse of the patent in suit. The claim for affirmative relief based on alleged violations of anti-trust laws was later withdrawn and the claim of misuse of the patent was asserted as an additional defense.

In the course of pre-trial hearings counsel agreed to a trial on the issue of misuse only, the remaining issues to be presented in a second phase of the trial if the Court finds that there was no misuse of the patent.

A trial was had on the issue of misuse of the patent. Defendant stipulated, for the purpose of this phase of the trial only, that the Court may assume plaintiff has established a prima facie case of validity and infringement so that defendant could proceed immediately with proofs on the defense of misuse. Both sides presented evidence on this issue.

## FINDINGS OF FACT

1. Plaintiff, Rocform Corporation, is a Michigan Corporation with a principal place of business in Oak Park, Oakland County, Michigan.

2. Defendant Acitelli-Standard Wall, Inc., is a Michigan Corporation with a regular and established place of business in Detroit, Michigan.

3. Plaintiff is a manufacturer of equipment and supplies for use in pouring concrete walls. It is the owner of certain combination patents, including the patent in suit, relating to forms for pouring concrete walls.

4. The patent in suit, No. 2,526,529, issued on October 17, 1950, is a combination patent for a "Prefabricated Wall Form." The form consists of wood panels connected together edge to edge by means of suitable clamps. The panels are assembled together into two parallel walls. Concrete is poured between these walls and allowed to harden or set, the clamps are then released and removed, the panels are disassembled, and the form is ready for re-use in casting another wall.

The invention is described in the patent as a collapsible wall form composed of relatively few simple parts capable of being readily erected and disassembled with a minimum amount of labor; the sections are releasably secured in assembled relationship by devices exceedingly simple to manipulate and which cooperate to securely hold the sections in proper relationship during pouring or introduction of the composition material therebetween.

5. The wall form or claimed combination of the patent in suit is an assembly of the following elements:

(1) Wall sections or panels with (2) attached walers (horizontal metal reinforcing strips secured to the panels) with the panels secured edge to edge by (3) clamps having slidable parts which engage (4) pins on the panel to form two parallel wall forms between which the concrete is poured and (5) tie rods, held together by (6) tie rod clips, extending between the wall forms to space the parallel walls.

6. All patents issued to plaintiff, in addition to the patent in suit, were introduced in evidence by defendant, one issued prior to and nine others after the date of issuance of the patent in suit. Artil Arrighini, plaintiff's president, is patentee or co-patentee in all but one of plaintiff's patents. The patent in suit is cited as a reference in the patents hereinafter described which are identified by an asterisk.

*Patent No. 2,251,775*, which expired in 1957, is for a "Concrete Form", suffi-

ciently economical and flexible in design to allow its use in all types of building projects, to pour concrete footings and wall sections in one operation. It comprises a plurality of light-weight sections capable of being readily joined together in the field. This patent is cited as a reference in the patent in suit. It is apparent from an examination of this patent and the one in suit that both cover a basic wall form but that the one covered by the patent in suit is superior to the form patented earlier. The earlier invention also rendered it possible to pour concrete footings and wall sections in one operation to form an integral one-piece construction.

*Patent No. 2,511,329,* issued on June 20, 1950, is for a "Form for Composite Walls Having a Sill" and is cited as a reference in *Patent No. 2,845,684* for a "Prefabricated form with Sill Member", described in the patent as an improvement in the means for forming an offset or sill. At the present time devices of these two patents are not being used by plaintiff.

*Patent No. 2,727,294\** is for a "Wall Form and Clamping Means Therefor" which holds the walls of the basic wall forms in a predetermined spaced relationship during the pouring operation and, in order to give the joined wall sections a smooth and uninterrupted surface, holds such adjacent sections in alignment or in edge to edge relationship.

*Patent No. 2,896,300\**, issued on July 28, 1959, is for an "Outside Corner Clamp for Prefabricated Wall Forms". This invention provides clamps which define corners of the angularly related panels of the wall form and prevent possibility of spreading of the panels during pouring operations. The specific device disclosed in this patent is not presently used because of an improvement over such device.

*Patent No. 2,789,337\**, issued April 23, 1957, is for an "Inside Corner Structure for Prefabricated Forms for Composition Walls" and relates to improvements in the structure provided to form corners of the composition wall. While this patent

was issued earlier than Patent No. 2,-896,300, application therefor was filed earlier.

*Patent No. 2,882,583\** for a "Prefabricated Form for Composition Walls" was issued on April 21, 1959. The basic wall form covered by the patent in suit includes panels with walers attached thereto. This invention provides for a construction of the walers and for use of stirrup pins and a brace therewith in an arrangement so that the brace assists in supporting the load applied to the panels by the composition material during pouring operations, and at the same time, supplies a catwalk for the workmen.

*Patent No. 2,960,743\** issued on November 22, 1960 is for a "Concrete Wall Form Construction and Adapter Clip Therefor" and relates to a device called an adapter clip which enables varying spacing between the panels of the basic wall form in order to produce concrete wall structures of different widths.

*Patent No. 2,944,344,* issued on July 12, 1960, is for a "Cork Tool" used for filling holes left by tie rods in the poured wall after stripping of the wall and removal of the tie rods.

*Patent No. 2,751,308* is for cement paint.

7. In 1952 plaintiff initiated a licensing program for use of its so-called "Rocform System" which it describes in its standard licensing agreement as "a system of prefabricated composite wall forms and patented hardware and accessories used for the construction and erection of concrete walls and structures". The same description is used in advertising for promotion of the Rocform System and is found in answers to interrogatories submitted by defendant requesting that plaintiff describe the Rocform System in detail.

8. Under provisions of the license agreement,

Licensor grants to licensee a non-exclusive license to use the Rocform System in accordance with terms thereof, agrees while the agreement is in effect to sell to licensee all necessary Rocform

panels and hardware and to replace and repair without charge worn out or damaged hardware, and authorizes use of the words "Rocform System" in promotion and advertising;

Licensee agrees to pay for the equipment and to pay a license fee for each basement he casts (license fees vary from approximately $10.00 to $25.00 per basement cast, depending on size);

It is acknowledged and agreed that "certain features, hardware and accessories used in and being a part of the Rocform System" are covered by patents and licensor stipulates that any further improvement in the system shall be available to licensee for use under the agreement;

The agreement and license is revoked, remanded and terminated upon default in payments or in any condition imposed by the license on use of the system.

9. At the present time approximately one hundred eighty-nine (189) licensees use the Rocform System in Michigan and other states; all such licenses were granted to those engaged in the business of constructing concrete walls or who were about to enter upon such business at the time of the license grant.

10. Plaintiff manufacturers for and sells and delivers to licensees only, but not in the regular channels of trade, equipment necessary for operating under the Rocform System, recommending or suggesting to a licensee purchase of a "package" or kit suitable for the type of construction in which the contractor-licensee is engaged. Such "packages", sometimes called "Alternates A, B, C or D", include the same parts but the quantity of each varies for casting larger or smaller walls, and consist of elements of the combination patents for wall-forming equipment owned by plaintiff.

11. Specifically, a "package" consists of wood panels with walers, clamps for connecting the panels together edge to edge, tie rods for spacing and holding the parallel wall forms together, and tie rod pins for fastening the tie rods to the panels, all of which are elements of the patent in suit, as well as items which are not elements of this particular patent such as stirrup pins, outside corner clamps, inside corner clamps, round corner forms, clamps and spreaders, and tie rod pullers. Choice of items within a suggested or recommended "package" is left to the licensee. Under the license agreement plaintiff obligates himself to furnish all necessary equipment but licensees are not required to purchase any equipment from plaintiff. All of plaintiff's licensees, however, purchased "packages" although some omitted the wall panels.

12. While the license agreement does not obligate a licensee to purchase any equipment whatsoever but only imposes an obligation on licensor to furnish the equipment upon request, and while the "package" is merely a recommended purchase, all but a few licensees purchased full "packages".

13. Plaintiff will refuse to sell any of the wall-forming equipment to non-licensees. It sells to anyone, without requiring a license therefor, a variety of tools and supplies, such as its patented cement paint, window forms, concrete chutes, and similar items.

14. The only reference in the license agreement as to ownership of patents by plaintiff is the statement that "certain features, hardware and accessories" are patented. No patents are identified therein by number or description of the actual invention covered. Plaintiff has no single patent covering the entire Rocform System nor does it have a patent on a "system" or "method" as those terms are known to patent law. None of the individual elements of the claimed combination of the patent in suit are separately patented. The Rocform System cannot be used, however, without use of one or more of the inventions covered by plaintiff's combination patents, including the patent in suit.

15. Only the basic wall-form patents had been issued when the first seven licenses were granted in 1952. Plaintiff claims no rights under the one patent

which expired in 1957, and presently uses the improved form covered by the patent in suit. An unused patent has been replaced by a patent for an improvement, and inventions under patents later than the patent in suit and now used by plaintiff are available to licensees who were granted licenses long before such patents were issued.

16. All but few of the licenses limit the territory within which a licensee may use the Rocform System. The licensee normally designates the territory within which he intends to operate. The territorial restrictions are not rigidly enforced at this time because poured wall contractors follow the general contractors with whom they work into areas in which the general contractor undertakes a construction project (R.185). Testimony of an interested witness hostile to plaintiff as to agreements by plaintiff, with licensors in several areas, that it will not grant licenses in those areas without consent of other licensees therein is too remote in time to establish what the practice of plaintiff is today. Also, many licenses have been issued in those areas thereafter and this fact does not corroborate defendant's claim that this is plaintiff's policy at the present time.

17. Several other types of wall forms for pouring concrete walls are available to poured wall contractors, such as Symons, Simplex, Universal, Gates, Allen, and there may be others (R.102). Some of the manufacturers in competition with plaintiff do a considerably larger volume of business than plaintiff. These forms mentioned are sold outright and require no license for use but the evidence does not establish that such forms or parts thereof are patented.

18. A poured wall contractor not licensed to use the Rocform System is not prevented thereby from operating or continuing in business but incurs higher costs than a Rocform licensee. Rocforms are speedily assembled and stripped, with a saving in labor costs, and eliminate other items of expense such as cost of snap ties ($60.00 to $70.00 per basement) used in another system (R.141). Use of Rocforms is, therefore, of competitive value to contractors in the trade.

19. Defendant is a poured wall contractor. Its president, Peter H. Acitelli, was plaintiff's licensee while operating as a poured wall contractor in his individual capacity. He later incorporated his business as Peter H. Acitelli, Inc., now in bankruptcy. Defendant corporation was organized in 1962 with Acitelli and the Standard Building Products Company as sole stockholders.

20. Defendant acquired most of its equipment from Benjamin Wilk, an officer of Standard Building Products Company. Wilk, as creditor holding a chattel mortgage on the equipment when it was owned by Peter H. Acitelli, Inc., acquired it upon foreclosure of the mortgage. Replacements are purchased by defendant from Kwik-lock Forms Company, plaintiff's competitor in the manufacture of wall-forming equipment. Kwik-lock's president, Frank G. Pauli, Jr., was formerly employed by plaintiff in an executive capacity and was thoroughly familiar with plaintiff's business operations, its licensing program, patent holdings and customers.

21. Within a short time after filing the instant suit plaintiff filed an action in the state court against Pauli and Kwik-lock alleging that said defendants, with knowledge of the provision in plaintiff's licenses for payment of fees, contacted plaintiff's licensees and induced them to repudiate their Rocform license agreements by purchasing Kwik-lock's hardware and thus avoiding payment of license fees under their license agreements. A preliminary injunction issued in that case restrains defendants therein from inducing any of plaintiff's licensees to violate their license agreements with plaintiff. Copies of pleadings in such action were introduced in evidence here and do not show that plaintiff is seeking in that action to restrain Kwik-lock from selling hardware in competition with plaintiff.

22. Plaintiff's standard form of license agreement contains a provision to the effect that the license is individual

and personal to licensee, that it is not transferable without licensor's written consent, and that it shall be used only by licensee in the construction business operated by him within the area limited in the agreement.

23. Defendant at no time prior to filing of this suit applied for a license from plaintiff for use of the Rocform System; it was notified by plaintiff, however, that it cannot use the system without a license from plaintiff. Plaintiff offered to license defendant but only under its standard license agreement. Such offer was refused by defendant.

## ISSUE

Did plaintiff, through its patent licensing program, misuse the patent-in-suit by attempting to extend the life and scope of its patent monopoly, beyond the boundaries of the patent grant?

## DEFENDANT'S CHARGES OF MISUSE BY PLAINTIFF

Defendant contends that plaintiff attempted to and did extend its monopoly improperly and thus misused its patent in suit in the following ways, any one of which is sufficient to forfeit its right to enforce its patent in this infringement suit:

1. Plaintiff, through its patent licensing program, bottomed upon the only useful patent, the patent in suit, restricted competition between and among licensee contractors who use plaintiff's wall forming equipment and thus improperly restrained trade in the poured concrete wall industry.

2. The requirement in the licenses, bottomed on the only useful patent, the patent in suit, that royalties be paid forever despite expiration from time to time of certain of the licensed patents, is an improper extension of the monopoly beyond the statutory seventeen-year term of the patent.

3. Plaintiff's restrictions in the license, bottomed on the patent in suit, against the free use of panels and miscellaneous hardware which plaintiff itself had sold, is improper and an extension of the monopoly of the patent in suit, an attempt to control the use of goods already sold and passed from plaintiff's control.

4. The requirement that purchasers pay royalties on and restrict territories of use of plaintiff's unpatented panels and hardware as well as its patented combination, is improper as an attempt to control unpatented goods by the patent in suit.

5. Plaintiff's "package license" is improper since it uses the patent in suit as a lever to compel license under ten additional patents, extending the monopoly and continuing it beyond the life of the patent in suit.

6. Plaintiff's tie-in requirement in its licenses, bottomed on the patent in suit, that purchasers of plaintiff's unpatented panels and hardware accept a license under the patent in suit, is improper as an attempt to expand the monopoly of the patent in suit to cover unpatented goods.

7. Plaintiff's suit against Kwik-lock, an attempt to shut off defendant's source of unpatented replacement hardware, is improper as an attempt to monopolize the sale and purchase of unpatented parts, outside the patent in suit.

8. Including an already expired patent in its licenses, and attempting to force defendant to accept a license based on an expired, as well as on unused patents, is an attempt to continue the monopoly beyond the life of the expired patent, and beyond the scope of the unused patents.

9. Licensing and demanding royalties on the use of a "system or method", activities beyond the scope of the patent in suit, in an attempt to use the patent in suit in areas outside of its scope, a misuse in that

it attempts to control activities outside the patent.

Prior to the trial of this case defendant filed a motion for summary judgment as to items originally sold by plaintiff to Peter H. Acitelli, and eventually purchased and used, by defendant, on the ground that the first sale of such equipment carried with it an implied license to use it and extinguished the patent monopoly as to such equipment. The motion was heard two (2) days before trial and taken under advisement. The same arguments are now also advanced at the trial in support of defendant's claims of misuse.

### DISCUSSION.

*Plaintiff's Suit against Kwik-lock*

Defendant's charges of misuse are directed primarily at plaintiff's licensing practice, except for the charge relating to plaintiff's suit against Kwik-lock, as an attempt to shut-off defendant's source of replacement parts. Pleadings in that suit, offered in evidence here, indicate that the suit is not one to enjoin manufacture of any hardware but to prevent interference with plaintiff's contractual relations with its licensees. This defense of misuse has not been established.

*Restriction of Licensees' Territory of Operation and Restraint of Trade in the Poured Wall Industry*

■■ The control of a patent monopoly carries with it the power to fix royalties for the reward of the patentee, and the patentee may even refuse to license. The patent monopoly can be used to compel acceptance of conditions attached to the enjoyment of the patented device. "Indeed, what conditions can be imposed by the patentees in the exercise of patent monopoly are limited, legal barriers aside, only by the ingenuity employed by the patentees in their attempts to obtain the maximum return for the use of their patented properties." American Securit Co. v. Shatterproof Glass Corp., 3 Cir., 268 F.2d 769.

■ As owner of the patents for use of the combinations in the patent in suit and its other combination patents which licensees were permitted to use, under the license agreement, plaintiff could limit the number of licensees in a certain area unless other legal barriers prohibited such restriction.

■ The findings of fact dispose of the claimed misuse of the patent by restricting areas in which a licensee may operate. In the findings of fact preceding this discussion, the Court found that there were other manufacturers of wall-pouring equipment, doing a larger volume of business than plaintiff, that non-licensee contractors could operate and continue in business using other types of forms than Rocforms, and that the restriction in question did not improperly restrain trade in the poured wall industry. Licensees, under the license agreement, were not restricted in the price they may charge for their work, and were not restricted to use of the "Rocform System" but could use any type of wall-forming equipment they chose; if they used the Rocform System, however, they paid royalties. These claims of misuse have not been established.

*Expired and Unused Patents*

■ The license does not compel a licensee to accept a license for an expired patent or for unused patents. The license merely permits licensee to use any of plaintiff's patents. Licensees who were granted a right to use the Rocform System in 1952 could use the inventions disclosed by the patents then owned by plaintiff, which were the basic wall-form patents. Licensees who obtained grants after the one license expired, were at will to use the basic wall-form involved in this suit, as well as any later patents which improved the Rocform System, as a whole.

*Use by Non-licensees of Second-hand Equipment*

■■ The claim that the equipment purchased by defendant second-hand is free from the patent monopoly and that restrictions in the license attempt to control the use of goods already sold and passed from plaintiff's control, is, in the

opinion of this Court, inconsistent with defendant's claim that any competitor can manufacture separate elements of a combination patent without infringement and that defendant has a right to purchase such elements or any of them from such competing manufacturers. The fact that all elements were originally purchased from plaintiff, as a set, at the same time, is not a controlling factor. Since such elements were unpatented, any other manufacturer could sell them, singly, or as a set. Thus there would be no reward whatsoever to the patentee, as manufacturer of the separate elements, not enjoyed by any other manufacturer. The peculiar circumstances of this case distinguish it from cases in which, for example, unpatented elements are combined in a machine and the machine is then sold, since in that case the machine cannot be sold by a competing manufacturer without infringing. Plaintiff does not dispute that the separate elements may be sold by a competitor and purchased from such competitor by defendant; plaintiff does challenge defendant's right to combine the elements to practice plaintiff's invention or inventions. Wall panels are used in every system other than the Rocform System. According to defendant's own testimony, the elements of the patent in suit can be used in avoidance of the patent in suit, according to advice of patent attorneys. This claim of misuse, not having been established, is not available as a defense. Such ruling of the Court also disposes of defendant's motion for summary judgment which, if granted, would permit defendant to practice the invention by use of the elements in a combination. Defendant, whose president as former licensee had full knowledge of the terms of the license agreement, purchased from a manufacturer who was fully conversant as a former executive employee of plaintiff, with plaintiff's business, its licensing program, and its patents, as found by the Court.

### Extension of Royalty Payments Beyond Term of Patent in Suit

The most formidable claim of misuse advanced by defendant, under the facts in this case, is that package patent licensing under one license extends the monopoly of the patent in suit by requiring payment of royalties after the patent in suit expires.

Plaintiff takes the position that its license agreement is not solely a license of patents, that patents are only incidentally involved therein by a grant of the privilege to use any of plaintiff's patents, and that a sufficient consideration for the royalty payment is found in the agreement by licensor to manufacture and sell all of the equipment required by licensee to set him up in business, to replace or repair hardware without charge, and to permit use of the name "Rocform System" so long as the license is in effect.

The license is, in the view of this Court, primarily a patent license and other features thereof are only incidental to the grant of use of patents. Upon a careful reading of the license agreement it is apparent that the prime consideration for the license fee is the grant to use the Rocform System which cannot be used without using the patent in suit and other patents. The services which are included in the consideration for the license are disproportionate to the license fees stipulated therein.

The agreement to furnish to licensee the unpatented separate elements of the combination patent in suit is a convenience to a licensee as he will be assured of having working tools for practice of the Rocform System but such unpatented elements or parts are also manufactured by and available from a competing manufacturer or manufacturers, as this suit indicates; such consideration for payment of the license fees is not, therefore, of paramount importance to the licensee.

Under the license agreement plaintiff undertakes to replace or repair the hardware used to practice the Rocform Sys-

tem without charge, during life of the license agreement. The equipment used by a licensee includes wall panels, made of wood, which are subject to damage much more readily than the sturdy metal hardware. There is no agreement to repair or replace panels. According to the evidence, the cost of repairs or replacements of the hardware is nominal, and replacements can be purchased from competing manufacturers.

Permission to licensee to use the name "Rocform System" in advertising and promotion was not even included as a consideration in earlier licenses.

Combined, the considerations for payment of the payment of the license fees by licensees, are minimal as compared to the privilege of using the inventions under plaintiff's patents.

The patent for the basic wall form covered by the patent in suit will expire in 1967 and the invention will then be in the public domain, available to any contractor in the trade, licensed or unlicensed by plaintiff. The licensee then has the privilege, still, of using the inventions under any other patents which plaintiff has. Those inventions on which plaintiff has a patent at the present time can only be used with the basic wall form, as is apparent from the description of the patents herein. Upon expiration of the patent in suit the consideration for the grant of the license becomes substantially devaluated; nevertheless, if a licensee continues to use the Rocform System and thus to avail himself of patents other than the patent in suit, he continues to pay the same royalty under the agreement or subjects himself to patent infringement suit if he discontinues to pay the fee but continues to practice the "system".

There is no termination period in the agreement and no provision for a reduction in license fees, the fee remaining standard for each basement cast. The only provision for termination is that which states that the agreement and license stand revoked, rescinded and terminated upon default in payment of any installments or license fees due under the

agreement, for a period of thirty (30) days after payments are due, or upon default in any conditions imposed by the agreement on use of the Rocform System. But in that event licensor, under the agreement, holds licensee responsible for all sums due and damages for the continued unlawful use of the Rocform System if licensee continues to use it after such termination. Use of the basic wall form will not then be unlawful but use of the remaining inventions included in the system would subject licensee to a charge of infringement.

Plaintiff cites Ashlock v. Atlas Pacific Engineering Co. (D.C.N.D.Cal.1963), 136 USPQ 339, also 139 USPQ 421, for the proposition that there may be other considerations than just a license under a patent which would affect the termination date of an agreement and that the agreement for which such other considerations are paid is independent of and apart from the patent itself. The facts in that case are not analogous to those in the instant suit. Ashlock owned olive-pitting machines on which it had a patent. It leased such machines to olive processors on a three-year basis, it being a custom in the trade for such processors to lease their machines and for machine manufacturers to lease them on a three-year basis. Attached to the machines were metal tabs to show that the machines were patented but no reference to patents was made in the leases. A competing machine manufacturer claimed misuse because Ashlock would not grant leases for less than a three-year term although its patent on the machine would expire in two years. The Court there held that the lease was in no way related to the patent, and that such leasing practice, relating to machines Ashlock still owned, was lawful per se. Here, plaintiff owns no tangible property relating to the patent in suit, but it merely licenses use of the patented combination, in return for a royalty for each basement cast by use of the Rocform System.

It was held in the American Securit Co. v. Shatterproof Glass Corp. case, supra, 268 F.2d at p. 776, that the power

conferred by the patent monopoly may be great enough, assuming that the patented process or product is a desirable one, to compel licensee to submit to a condition that it accept licenses under other patents in the same art. It also distinguished between voluntary and mandatory package licensing. We quote from that opinion (p. 777).:

"Each patent gives its owner a monoply in respect to its disclosure, so much and no more. It is a grant of the exclusive right to manufacture, use and sell the invention which is disclosed. That invention is what the patent grant protects by the monopoly, not that invention plus some embellishment, improvement, or alternate product or process, which also happens to be patented. * * * Each monopoly must stand on its own footing * * * Mandatory package licensing is no more than the exercise of the power created by a particular patent monopoly to condition the licensing of that patent upon the acceptance of another patent but that is too much. The protection, or monopoly, which is given to the first patent stops where the monopoly of the second begins.

"Whatever may be the asserted reason or justification of the patent owner, if he compels a licensee to accept a package of patents or none at all, he employs one patent as a lever to compel the acceptance of a license under another. Equity will not countenance such a result."

The standard licensing agreement in that suit provided that it shall continue in full force and effect to the expiration of the last to expire of any of the patents. Such provision, the Court held, constituted a patent misuse because it extends the payment of royalties of patents under patents which may expire to the expiration date of that patent most recently granted. The license in suit does not contain a similar provision; but there is no license for use of the patent in suit alone, the license is for the Rocform System which covers also use of other patented combinations. Anyone desiring to practice the invention of the patent in suit alone, can obtain grant of a license to do so only under plaintiff's standard licensing agreement, not on any other basis. Artil Arrighini, plaintiff's president, upon questioning on the witness stand as to the termination of the agreement, indicated that the license could go on forever. Since the agreement covered use of any of plaintiff's patents, while using the Rocform System, the licensee would be held to payment of the license fee, in undiminished amount, until a time when there were no existing patents. In effect, then, this license agreement is identical to that involved in the American Securit Co., case, supra, and such effect results in an enlargement of plaintiff's patent monopoly.

Authorities are not in agreement as to extension of a licensing agreement beyond the life of a patent but in this jurisdiction it has been held that parties to the agreement may so provide by their agreement. Starke v. Manufacturers National Bank of Detroit, D.C., 174 F. Supp. 882, affirmed on appeal by the Court of Appeals for the Sixth Circuit in 283 F.2d 117. No misuse of patent, however, was claimed in that suit, which was one for collection of royalties. In support for the proposition stated the trial court cites, among others, the case of Sproull v. Pratt & Whitney Co., 2 Cir., 108 F. 963 in which the court stated that parties may contract as they choose.

In Automatic Radio Mfg. Co. v. Hazeltine, 1950, 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312, it was held that it is not per se a misuse of patents to require licensee to pay royalties based on a percentage of sales, though none of the patents were used by a licensee under an agreement which permitted such licensee to use any of plaintiff's patents. The Court found there that the record did not support a claim that a license would be refused to anyone on any one or more of the patents upon refusal to take a license under all patents.

■ Licensing of several patents in single license agreement does not constitute patent misuse unless element of coercion is present, such as where there has been request by prospective licensee for license under less than all patents and refusal by licensor to grant such license. Eversharp, Inc. v. Fisher Pen Co., 1961, D.C., 204 F.Supp. 649.

' Applying the above stated principles to facts in the instant case, if payment of royalties may be extended by agreement beyond the life of a patent, and package patent licensing is not per se illegal, present licensees of plaintiff could contract with it as they choose; if the consideration was acceptable to them, in return for the package patent license and services to be performed thereunder, and it has not been shown that any licensee requested but was refused a grant of a license to use one patent only upon acceptance of a license to use more than one patent, no mandatory package patenting has been established as to such licensees. But plaintiff offered to defendant, and defendant refused, plaintiff's standard license on the ground, primarily, that defendant would be required to continue payment of royalties after expiration in 1967 of the basic wall-form patent, if it entered into such licensing agreement.

'It is true that the patent in suit will not expire until 1967 but defendant cannot be coerced to accept now the only type of agreement offered by plaintiff to license use of the equipment defendant owns to practice the invention in suit. Such agreement may, upon expiration of the patent, expose it to litigation at that time under circumstances stated earlier in this opinion. Mandatory package patent licensing, as to defendant, has been proved.

■ If defendant's hands be unclean in that it made no bona fide application to plaintiff for licensing, or for any other reason indicated by the facts in this case, such uncleanliness will not render plaintiff's hands clean if it is attempting to unlawfully extend its patent monopoly.

American Securit Co. v. Shatterproof Glass Corp., supra.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter of this suit.

■ 2. In this action for infringement of a patent by defendant, the defense of misuse of the patent in suit, by attempting to extend patent monopoly beyond the expiration date of the patent, has been established and is a valid defense.

3. Due to misuse of the patent in suit by plaintiff, as owner thereof, this action will be dismissed for want of equity.

An appropriate decree may be entered in accordance with these Findings of Fact and Conclusions of Law.