Preston L. VELTMAN and Irving L.
Ochs, Plaintiffs,

v.

NORTON SIMON, INC. et al.,
Defendants.

No. 74 Civ. 4862 (MP).

United States District Court,
S. D. New York.

Jan. 26, 1977.

A. Lincoln Epworth, New York City, for plaintiffs.

Breed, Abbott & Morgan, New York City, for defendant Denver Chemical Mfg. Co., Inc., by Charles Kadish, Arthur Kokot, New York City.

POLLACK, District Judge.

This is a diversity suit within the jurisdiction of this Court under 28 U.S.C. § 1332 presented at a bench trial seeking to enforce a contractual obligation to pay royalties to plaintiffs for the exclusive use of two United States patents for a period of 25 years. The patents expired before the 25 years ended and the licensee refused payment of royalties payable under the contract after such expiration. The defendant Denver (Denver Chemical Manufacturing Co.) counterclaimed for a declaration of invalidity of the obligation to pay royalties for use of the patented products after expiration of the patents.

Prior to the trial, Denver moved for summary judgment or for judgment on the pleadings. These motions were denied in opinion on the ground that an issue of fact was suggested as to the contractual intent of the parties with respect to the divisibility of the alleged obligations for which payment was contracted as between use of the patents and supply of "know-how" under these and possibly other patents and severability of the royalties into two parts, one for each aspect of the alleged obligations.

For the reasons appearing hereafter, Denver is entitled to judgment in its favor on the complaint and consequently its counterclaim becomes moot.[1] The plaintiffs failed to sustain the burden of proof of a contractual intent that the royalties were divisible or that they were for purposes other than the use of the patents either before or after their expiration.

Plaintiffs, one a research chemist and the other a medical doctor, collaborated in research resulting in the issuance of two patents, in 1955 and 1957, on a therapeutic composition of acetic acid for treating infections. Denver, a company engaged in the manufacture and sale of drug products, sought to acquire patented compositions which it could profitably commercialize.

In late 1958 plaintiffs approached Denver with the object of interesting it in certain compositions covered by the two patents and potential related compositions as to

---

1. The complaint was dismissed before trial as against the only two other defendants who had been served in the instant action. No claim is made in this action against any defendant other than Denver.

which plaintiffs claimed to have developed know-how and which they proposed to perfect into a whole line of marketable products utilizing the therapeutic properties of acetic acid. Negotiations resulted in an agreement dated March 23, 1959, which gave Denver the right to clinically evaluate the patented compositions and determine their commercial feasibility, in order to decide by June 30, 1960 whether to accept plaintiffs' offer of an exclusive license to market those compositions.

Denver decided to accept plaintiffs' offer and the parties consummated an exclusive licensing agreement dated May 16, 1960 which provided, in relevant part, for a royalty of 5% of the annual net sales of the patented products, to be paid for 25 years. Plaintiffs had proposed a license agreement of unlimited duration, but they acceded to Denver's request that, for its tax reasons, the agreement be limited to 25 years.

The 1960 agreement further provided for a minimum annual royalty, with the proviso that if both patents should expire the minimum royalty would cease and the percentage royalty would decline to 3%. In 1962 the agreement was modified to delete the minimum royalty requirement and to mandate that the percentage royalty would remain at 5% even if both patents were to expire.

■ The 1960 agreement, as modified in 1962, falls within the ban of *Brulotte v. Thys Co.,* 379 U.S. 29, 85 S.Ct. 176, 13 L.Ed.2d 99 (1964), wherein it was held that "a patentee's use of a royalty agreement that projects beyond the expiration date of the patent is unlawful *per se.*" A patentee may not use the power of his patent to levy a charge for making, using, or selling products not within the reach of the monopoly granted by the government.

As in *Brulotte,* the royalty payments due for the post-expiration period under the agreement of the parties herein are by their terms for use during that period, not deferred payments for use during the pre-expiration period. Pursuant to the 1962 amendment, the royalties exacted were the same for the post-expiration period as they were for the period of the patents.

The license given Denver draws no line between the term of the patents and the post-expiration period with regard to royalties or use, and plaintiff Veltman testified that none was contemplated. The instant royalty arrangement constitutes on its face an impermissible extension of the patent monopoly beyond the statutory period.

Proof that the patentee used the coercion of its patent leverage is not necessary to establish *Brulotte* patent misuse. *Compare Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Denver's *Brulotte* defense is not precluded by estoppel or waiver. *See Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); *Scott Paper Co. v. Marcalus Manufacturing Co.,* 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47 (1945); *Ar-Tik Systems, Inc. v. Dairy Queen, Inc.,* 302 F.2d 496 (3d Cir. 1962).

Plaintiffs have endeavored to avoid the holding of *Brulotte* by characterizing the disputed royalty as payment for not only the use of their patented compositions but also their know-how and a right of first refusal on future products they might develop. The proof failed to establish by a fair preponderance of the credible evidence that the parties intended or arranged such divisibility.

Plaintiffs' argument is based on certain provisions of the 1959 agreement which obligated them to render services in the development of the patented products in a form suitable for marketing; to grant Denver the right of first refusal to evaluate other products developed by them during the term of the agreement and a corresponding right to an exclusive license to market those products; to disclose to Denver (but not to any third persons) all know-how with respect to the patented products during the term of the agreement; and to consult with Denver as to compliance with applicable laws and regulations. The 1959 agreement provided that all obligations set forth therein should survive all licenses granted pursuant thereto, and the 1960 agreement pur-

ported to be subject to the terms of the 1959 agreement.

Plaintiffs' contention that Denver's royalty obligation was intended in substantial part as consideration for an alleged contractual duty to aid the development of and to disclose know-how regarding the patented products throughout the 25 year license term is not established by the witnesses or documents in evidence. Plaintiff Ochs testified that no changes in the composition of the patented products were required after the grant of the license in order to make them marketable. He further testified that there was no need for additional developmental know-how once the patented compositions had been established, which occurred before June 1960. The patents themselves adequately taught the preparation and use of the licensed products.[2]

Even if the rights to plaintiffs' services acquired by Denver in the 1959 agreement were deemed to subsist beyond the inception of the 1960 license, those rights were merely incidental to Denver's right to use the patented compositions and do not save plaintiffs' royalty arrangement from the defense of patent misuse by reason of extending payments for a monopoly beyond the life of the patent. *See Rocform Corp. v. Acitelli-Standard Concrete Wall, Inc.*, 237 F.Supp. 34 (E.D.Mich.1964), *aff'd*, 367 F.2d 678 (6th Cir. 1966). As indicated by the testimony of Dr. Ochs, the services which plaintiffs were obliged to furnish under the 1959 agreement were minimal. They related to merchandising the products and were essentially those which any licensor interested in the net sales would undertake in self interest.

Moreover, plaintiffs failed to establish what part, if any, of the percentage royalty was allegedly intended to be compensation for consideration other than the patent license. The 1962 modification eliminated any notion of divisibility of the royalties upon expiration of the patents. The evidence does not establish any intent of the parties to apportion the royalties between the license and the other rights allegedly acquired by Denver.

The 1960 agreement contemplated that all its parts and the consideration therefor should be interdependent. This is not a case where the performance of each party under the agreement was divided into two or more parts; the number of parts due from each party was the same; and the performance of each part by one party was the agreed exchange for the performance of a corresponding part by the other party. Consequently, the agreement is not severable (*First Savings & Loan Association v. American Home Assurance Co.*, 29 N.Y.2d 297, 327 N.Y.S.2d 609, 277 N.E.2d 638 (1971)) and the post-expiration royalty provisions are unenforceable.

Accordingly, plaintiffs are not entitled to any recovery on their complaint, and the action is dismissed as to all named defendants herein.

The foregoing establishes that Denver's counterclaim for a declaratory judgment is redundant and has become moot, and it is accordingly dismissed. *See* 6 *Wright and Miller, Federal Practice and Procedure* § 1406 (1971), *cited with approval in Aldens, Inc. v. Packel*, 524 F.2d 38, 51–52 (3d Cir. 1975), *cert. denied*, 425 U.S. 943, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

The foregoing shall constitute the findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a).

SO ORDERED.

---

**2.** It should also be noted that plaintiff Ochs testified that plaintiff Veltman held some 100 patents, yet the evidence was that he had not offered Denver an opportunity to evaluate or secure a license to market those products. Apparently Veltman did not consider himself bound by the language of the 1959 agreement to give Denver any such first refusal rights for the ensuing 25 years.